Johnson, J.
delivered the opinion of the Court.
This case comes before the Court in the form of an appeal from an order made at chambers by Mr. Justice Bay, refusiug the application of the relator for a prohibition to restrain the respondents from proceeding to collect from him, by execution, *166 certain fines, amounting to one hundred dollars, imposed on him by a court-martial for neglecting to perform patrol duty in the militia beat company in which he resides.
The relator is one of the Associate Judges of the Supreme Court of the United States, and the only question, as the case now comes before us, is, whether he was, or was not bound to perform that duty.
The act of 1819, on which bis liability is supposed to depend, makes it the duty of the commanding officer of every militia beat company, to cause a roll to be made, designating the persons liable to do patrol duty in the several patrol districts, which shall include every free white male inhabitant, above' the age of 18 years, excepting only those over the age of 45, who own no slaves.
The relator being an owner of slaves, and an inhabitant of the patrol district in which the duty was required to be performed, concedes that he falls within the description of the persons rendered liable by the act. But he claims to be exempted from it on the grounds.
1. That this is a military duty from which the Congress of the United States, having the power under the constitution, have by the act of 5th of May, 1792, Grayd. Dig. 294, expressly exempted him, as one of the judicial officers of the United States.
2. That whether the duty required, be military or civil, the performance of it is incompatible with his duty as a Judge of the Supreme Court of the United States, and therefore he was not bound to perform it.
1. From the view which 1 have taken of the case, I have not deemed it necessary to investigate with much care the question, whether this service is purely military or civil, or of a mixed character ; for whether it belongs to the one or the other, it is certainly a municipal police regulation, used as a means of preserving domesting tranquillity, and of keeping our coloured population in due subjection and subordination, over which the Congress of the United States neither have, nor pretend to exercise any control.
The constitution of the United States confers on Congress the power of organizing, arming, and disciplining the militia, reserving to the States the appointment of the officers, and the authority of training them according to the discipline prescribed by *167 Congress : 1 Art. 8 sec. Const. U. S.: and with respect to the powers derived from this authority, no one will question that Congress has the right to prescribe who shall, or shall not, perform the duty imposed. But there is certainly nothing in this . . . „ , . , , , or any other provision of the constitution, which takes away from the States the power of using its own armed inhabitants for the purpose of preserving its domestic tranquillity. Will it be contended that under this authority, Congress have the power to prohibit the States from using the posse comitatus to inforce the execution of the laws, or of calling upon her militia to suppress an insurrection, or repel an invasion 1 I apprehend not. These are rights which are unalienable, and without which, civil liberty could not exist. The exercise of these powers are then reserved to the States, and of necessity, the right of prescribing who shall be bound to assist in their execution.
I come then to the conclusion that whether patrol duty be a civil or military duty, or a compound of both, it is not embraced in the'power granted to Congress to prescribe a mode in which the militia shall be disciplined, and consequently that Congress possesses no authority to determine who shall or shall not perform it.
2. I take it as well settled, that when the law imposes on the citizen different and incompatible duties of equal obligation, the citizen may elect which he will perform. The case of Harrington v. Commissioners of Roads, 2 M‘C. 400, is an illustration of the rule: as Clerk of the Court of Common Pleas, he was required by law to keep his office open during certain hours in each day; and as a citizen not expressly exempted, he was bound to work on the public roads, to keep them in repair: and having elected to remain in his office, the Constitutional Court granted a prohibition to restrain the Commissioners of the Roads, from collecting a fine imposed on him for not working on the road.
I take it as equally clear, that when- one duty is inconsistent with and paramounfto another, the citizen is bound to discharge that of superior obligation, which I would illustrate by a comparison of the duties of Chief Magistrate with those civic duties, which all the citizens are bound in common -to perform, and which would be incompatible with the office of Chief Magistrate, as serving on juries, discharging the duties of a constable, and the like.
*168 In the organization of the government of the United States, tjle constjtutjon contemplated that certain persons, to be selected according to a prescribed mode, should be set apart for the purpose of filling the various departments ; and without an , . , . . . , . . ¡, exclusive power over these iuctionanes, the machinery ot the government could not be kept in motion. Sha 11 the car of State stand still, whilst the President of the United States, whose presence is necessary at the seat of government, shall travel to the remotest section of the Union to perform a duty required of him by a police regulation of the State in which he happens to reside ? Shall the suitors in the Supreme Court of the United States pocket their briefs, until the Chief Justice shall return to his place of residence to determine causes small and mean ? Or must the operations of the Federal Army be arrested until the Commander in Chief shall patrol the streets of his native town or village 1 Certainly not. It is then the privilege of the government to appropriate to itself exclusively the services of a portion of its eitizens to carry on its operations.
Next to the paramount obligation which all mankind owe to the Creator, moralists place our duty to our common country; descending, by regular gradations, through all the various divisions and subdivisions of the departments of the government and society, to the domestic circle. A nd if we take this as a rule of action, and test the obligation of the relator to perform patrol duty by it, it is obvious, that the duty which devolved on him as' a Judge of the Supreme Court of the United States was paramount. The last was an obligation to the whole Union, the former to the State alone. But it is enough if they were of equal obligation, and it is only necessary further to inquire whether these duties are, or are not incompatible.
He is compensated for his services as a Judge by an annual salary ; he is bound therefore to appropriate the whole of his personal services to the discharge of the duties of that office, if its exigencies shall require it. At present he is bound to hold the Circuit Courts for this State and Georgia, and to attend the sittings of the Supreme Court at Washington, which, without intending to be minute, we may, I think, taking the time occupied in travelling, safely estimate at five months in the year. He is *169 also, under particular circumstances, bound to supply the place of the District Judge in the Court of Admiralty, which is regarded as always open, and may sit cle die in diem if business require it. And if we add to this the necessity which the office imposes, of appropriating so much time and attention, as may be necessary to keep pace with the progress of the science of the law, and the various other incidental duties of his office, a Judge has not one moment of time to appropriate to other regular employments.
The patrol law imposes on him, as an inhabitant, the duty of riding patrol at least once in every fortnight, and oftener, if the commanding officer shall think it necessary. This duty is usually performed in the night time, and consists in scouring the country, examining negro-houses and other suspected places, and inflicting corporal punishment on slaves found out of their owner’s plantation, without a ticket, or some other lawful excuse.
Now with respect to the time when the relator is actually ab-seut from the State, I think it will not be questioned that the duties are wholly incompatible. He has not the power of ubiquity. He cannot be here and at Washington at the same instant. If the obligations are equal, he has the right to elect: if the duties of a Judge arc superior, he is bound to perform them. Of necessity therefore, with respect to this portion of his time, he is exempted from performing the patrol duty, not as a matter of favour, or excuse, but as a matter of right.
It is said, however, that during the vacation, this incompatibility does not exist; and it is true that it is possible he might perform this duty without neglecting the higher duties of the bench. But I set out with the principle that the government has a right to set apart the services of as many of her citizens as are necessary to its administration, exclusively to that use; and I think I have already shown, that from the nature and office of a Judge of the Supreme Court, the United States have contracted with him, if that expression is admissible, for the whole of his time, and may require his exclusive and entire devotion to the duties of that office: and it is wholly incompatible with these duties that he should, at any time, be called on to give his personal service in a local police regulation. For he who faithfully discharges the high and important duties of a Judge of the Supreme Court of the United States with fidelity, has, *170 in all conscience, enough of labour and responsibility to intitle t0 an exemption from all the other duties of a citizen.
It is insisted also, that the patrol laws authorize the employing a su*:,st'tu,:e) an<I 'n *bat way the relator might perform the duty of a patrol, consistently with his duty as a Judge. But it will be recollected that if the liability is established, in the event of his being unable to get a substitute, which might well happen, it becomes personal, and in this way an object might be indirectly effected which I have before shown cannot be directly attained.
I am therefore of opinion that the prayer for the prohibition should be granted, and it is accordingly so ordered.
Nott, J. concurred.